IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-03059-RBJ

JAMIE N. RUTH,

    Plaintiff,

v.

CAROLYN W. COLVIN[1], Acting Commissioner of the Social Security Administration,

    Defendant.

---

ORDER

---

This matter is before the Court on review of the Commissioner's decision denying plaintiff Jamie N. Ruth's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). This dispute became ripe for decision by this Court on July 15, 2013 upon the filing of plaintiff's reply brief. The Court apologizes to the parties and counsel for its delay in addressing the case.

**Standard of Review**

This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, and thus her name is substituted for that of Michael J. Astrue as the defendant in this suit. Fed.R.Civ.P. 25(d)(1). By virtue of the last sentence of 42 U.S.C. § 405(g), no further action needs to be taken to continue this lawsuit.

[Commissioner's] decision and whether the [Commissioner] applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record. . . ." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

**Procedural History**

Ms. Ruth first applied for disability benefits on April 30, 2010. R. 14. She alleges she first became disabled on April 25, 2010 due to fibromyalgia, thyroid problems, Graves' disease, eye problems, and bad knees. The Social Security Administration initially denied her application on August 20, 2010. *Id.* Ms. Ruth then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held a hearing on October 13, 2011. Ms. Ruth was not represented by counsel at the hearing. On October 20, 2011, ALJ Richard J. Maddigan issued an opinion denying benefits. Ms. Ruth then appealed the ALJ's decision to the Appeals Council, supplying new medical evidence along with her appeal. The Appeals Council accepted the new evidence but nonetheless denied her request for review on September 28, 2012. R. 1. Thereafter she filed a timely appeal with this Court.

**Facts**

Medical Impairments

Ms. Ruth's medical history contains evidence of several impairments. She is (or was) obese, with a body mass index ("BMI") of 39. R. 320. She also experienced edema in her lower extremities. *Id.* Treatment notes from her primary care doctor, Dr. Katherine Fitting, indicate a

2

history of Graves' disease, bad knees, fibromyalgia resulting in "extreme pain and discomfort," anxiety, and depression. R. 321. During an exam, Dr. Fitting noted some reduced range of motion in Ms. Ruth's right arm, although later exams did not reveal similar limitations. R. 322.

Ms. Ruth also suffered from spasms, numbness, headaches, and pain that Dr. Fitting's notes attribute, at least in part, to low calcium and other complications related to her thyroidectomy. R. 323-24. Apparently supplemental calcium helped alleviate these symptoms to some extent. *Id.* In light of these symptoms and exam results, Dr. Fitting assigned Ms. Ruth some exertional limitations but concluded that she would be "a perfect candidate for retraining for a desk job such as computer or clerical work." R. 319.

ALJ's Opinion

The Social Security Administration uses a five step process to determine whether a claimant qualifies for disability insurance benefits. At step one, the ALJ determined that Ms. Ruth had not engaged in substantial gainful activity since April 25, 2010 (her alleged onset date). At step two, the ALJ found that Ms. Ruth suffered from the following severe impairments: fibromyalgia, Graves' disease, and obesity. R. 16. The ALJ also noted that Ms. Ruth suffered from medically determinable thyroid disease, depression, and anxiety. R. 17-18. He concluded, however, that these impairments were not severe. *Id.* At step three, the ALJ determined that none of these impairments—alone or in combination—met or medically equaled one of the listed impairments.

At step four, the ALJ noted that Ms. Ruth is unable to perform any of her past relevant work, but the ALJ nonetheless decided that she has a residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift 20 pounds occasionally; less than 10 pounds frequently; stand and walk 3 out of 8 hours; sit for 6 out of 8 hours; occasionally engage in postural

3

      activities, but frequently balance; can never climbing [sic] of ropes, ladders, or scaffolds; and must avoid concentrated exposure to hazards or driving.

R. 18.

In reaching this conclusion, the ALJ decided that Ms. Ruth's symptoms might be caused by her medically determinable impairments, but that her statements regarding the intensity of her symptoms lacked credibility. R. 19. Ms. Ruth's symptoms of shortness of breath, edema, and heart palpitations were intermittent, and therefore her claims about the limiting effects of these symptoms were considered not entirely credible. R. 20. The ALJ reached similar conclusions regarding the limiting effects of Ms. Ruth's fibromyalgia, namely that the inconsistent reports of pain in the medical evidence and Ms. Ruth's apparent disinterest in pursuing more aggressive treatments suggested that the fibromyalgia was relatively well-controlled and did not impose significant functional limitations. *Id.*

The ALJ also discounted Ms. Ruth's claims of disabling, daily headaches because they appeared unsupported by the medical evidence. R. 21. Finally, the ALJ noted that Ms. Ruth specifically testified that she "feels that she is able to perform [sedentary, unskilled] work, and is taking active steps in her life to be able to perform such work." R. 21. This testimony was supported by Dr. Fitting's opinion about Ms. Ruth's ability to work at a desk job. Because Dr. Fitting served as Ms. Ruth's treating physician and because her opinion was basically consistent with the rest of the medical evidence, the ALJ gave her opinion "significant weight." *Id.* The ALJ gave great weight to the opinion of the state agency physician, Dr. Horsely, because his opinion was supported by a thorough review of the record and was generally consistent with that record. R. 22.

At step five, the ALJ asked a vocational expert to opine about the employment opportunities available to a hypothetical person with the residual functional capacity assigned to

Ms. Ruth. The expert indicated that such a person would be able to find employment in the national economy as a drive-in order clerk, a document preparer, or a call-out operator. R. 23. Accordingly, the ALJ concluded that Ms. Ruth was not entitled to disability benefits under the Act. *Id.*

        <u>New Evidence Submitted to the Appeals Council</u>

After the hearing, Ms. Ruth was diagnosed with a relapsing-remitting variant of multiple sclerosis ("MS"). R. 428. After her symptoms worsened, Dr. Fitting referred her to a neurologist and ordered a CT scan. R. 442. According to Dr. Fitting, this condition could cause many of the symptoms reported by Ms. Ruth during earlier visits and exams. R. 428 ("It causes intermittent vision disturbances, lightheadedness, auditory disturbances and migraine headache. All of these problems are made worse by prolonged viewing of a television or computer screen."). Moreover, Dr. Fitting cautioned that the MS treatment itself "can cause significant side effects and these will need to be assessed on an ongoing basis in the coming months." *Id.*

Accompanying this diagnosis, Dr. Fitting provided an updated functional capacity assessment. R. 431-37. That document indicated that Ms. Ruth would only be able to sit for one or two hours in an eight-hour workday and stand and walk for less than one hour. R. 433. The assessment also concluded that Ms. Ruth would sometimes have to lie down at unpredictable intervals throughout the day. *Id.* Dr. Fitting stated that these limitations applied to Ms. Ruth as far back as October 11, 2011. As a whole, the new evidence reveals fluctuating symptoms and limitations. *Compare* R. 431-37 (indicating significant limitations) *with* R. 394-95 (indicating normal gait, no weakness, and Ms. Ruth's opinion that she was doing a bit better).

The Appeals Council accepted this new evidence, but concluded that it did not warrant a reconsideration of the ALJ's decision. R. 1-4. Ms. Ruth seeks review of this final decision of the Commissioner.

**Analysis**

Ms. Ruth makes two arguments on appeal: (1) the Appeals Council should have provided more explicit analysis of her new evidence; and (2) the new evidence indicated that the ALJ's decision was not supported by substantial evidence and the Appeals Council should have remanded the case to the ALJ for further consideration. After considering the record and the briefs of both parties, I conclude that while the Appeals Council was under no obligation to provide more analysis than it did in its written denial, Ms. Ruth's new evidence regarding the MS does deprive the ALJ's decision of substantial evidentiary support, and a remand is required.

**1.   The Appeals Council's Explanation Was Adequate**

The regulations outline the circumstances under which the Appeals Council is required to review a case:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b). Upholding a short denial of review by the Appeals Council, the Tenth Circuit concluded that there is "nothing in the statutes or regulations that would require [an express] analysis where new evidence is submitted and the Appeals Council denies review." *Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir. 2006).

Ms. Ruth acknowledges that *Martinez* is on point, but suggests it is distinguishable because in *Martinez* the new evidence consisted of treatment records rather than new opinion evidence and also that the Tenth Circuit reached the result it did because of Mr. Martinez's failure to alert the court to relevant authority. I am unpersuaded.

As the government points out, the Tenth Circuit has subsequently affirmed its holding in *Martinez* in cases involving new medical source opinion evidence. *See Robinson v. Astrue*, 397 F. App'x 430, 432 (10th Cir. 2010) (unpublished); *Martinez v. Astrue*, 389 F. App'x 866, 868-69 (10th Cir. 2010) (unpublished); *Armijo v. Astrue*, 385 F. App'x 789, 797 (10th Cir. 2010) (unpublished). Moreover, I can see no reason why the difference in form would require more explicit analysis. The regulations do not suggest that a more exacting standard applies when the new evidence is opinion evidence rather than treatment notes.

Ms. Ruth's argument that 20 C.F.R. § 404.1527(e)(3) would have changed the Tenth Circuit's mind in *Martinez* is similarly unpersuasive. That regulation states that "[w]hen the Appeals Council makes a decision, it will follow the same rules for considering opinion evidence that administrative law judges follow." *Id.* As the government points out, this regulation does not apply to the Appeal Council's decision in this case. The Council did not make a decision but rather denied Ms. Ruth's request for review. 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review *or* it may decide to review a case and make a decision.") (emphasis added). Because the Appeals Council did not issue a decision of its own, the regulation does not apply.

### 2. The Additional Evidence Undermines the ALJ's Decision

Ms. Ruth also argues that the new evidence she submitted deprives the ALJ's decision of substantial evidentiary support. "[N]ew evidence [submitted to the Appeals Council] becomes

7

part of the administrative record to be considered when evaluating the [ALJ's] decision for substantial evidence." *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). Retrospective diagnoses are acceptable evidence, although such a diagnosis does not necessarily prove that a claimant was legally disabled at that earlier date. *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990).

Ms. Ruth points out that Dr. Fitting believed the MS could have been the cause of her earlier symptoms, and that under the Social Security Regulations, MS is presumptively disabling. 20 C.F.R. § 404 Subpart P, Appendix 1, § 11.09 ("Listing 11.09"). And even where symptoms fluctuate, a finding of disability is still possible. Listing 11.00 ("In conditions which are episodic in character, such as multiple sclerosis . . . consideration should be given to frequency and duration of exacerbations, length of remissions, and permanent residuals."). Therefore the fact that Ms. Ruth's symptoms might fluctuate is not a reason for this Court to deny her appeal. If anything, that fact is one that needs further elucidation before the ALJ because he did not consider her MS let alone the durational factors outlined in Listing 11.00. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). ("[T]o the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action.").

Finally, the ALJ engaged in a thorough analysis of the appropriate weight to be given all of the opinions and testimony in the record, but this new evidence renders much of his analysis incorrect. I don't mean to suggest that the ALJ improperly weighed the evidence before him (since that would be outside the scope of this Court's review). I merely point out that the justifications given for the ALJ's findings are simply no longer true in light of the new diagnosis and new opinions.

First, the ALJ gave significant weight to Dr. Fitting's earlier opinions, and this new evidence—mostly from Dr. Fitting—undercuts and even contradicts those earlier opinions on which the ALJ relied. For example, the ALJ noted that Dr. Fitting and Ms. Ruth both believed that Ms. Ruth could return to sedentary employment. That opinion is no longer true in light of the new evidence. The ALJ also gave great weight to the opinion of the state agency physician in part because it was in substantial agreement with the rest of the medical evidence. In light of the new evidence, that justification is no longer true. And ultimately the ALJ discounted Ms. Ruth's claims about her limitations in part because "of the relatively weak medical evidence." R. 21. Again, that justification is no longer necessarily true. This incongruity between the ALJ's decision and the record as it now exists makes effective review impossible, and it begs this Court to engage in fact-finding that is reserved to the ALJ. *See Allen*, 357 F.3d at 1145.

Of course, the simple fact that Ms. Ruth was retrospectively diagnosed with MS is not conclusive evidence of disability. As the Commissioner puts it "Plaintiff's diagnosis of multiple sclerosis is not dispositive. The question is what limitations resulted from her multiple sclerosis during the relevant time period. . . ." Def.'s Br. 14. That is exactly right, but the logic does not lead where the Commissioner wants it to lead. If the ALJ discounted Ms. Ruth's claims about the intensity and limiting effects of her symptoms in part because of insufficient medical evidence and because of Dr. Fitting's inconsistent medical opinion, then the Commissioner should agree that such discounting ought to be reconsidered in light of this new medical evidence and new medical opinion.

In short, this diagnosis and the updated medical opinion have the potential to change most, if not all, of the ALJ's weighing of the various parts of the record. And the fact that MS is presumptively disabling under the Social Security Regulations further undermines the evidence

supporting the ALJ's conclusion. It is possible that the ALJ could, after considering the MS, still find Ms. Ruth able to work, but without a shred of analysis of Ms. Ruth's MS it is impossible for this Court to conclude that the ALJ's outdated opinion is still supported by substantial evidence.

### Remedy

Ms. Ruth requests that the Court remand the case to the ALJ for further fact-finding. Additionally, she asks the Court to award attorneys' fees under the Equal Access to Justice Act ("EAJA") on the grounds that the Commissioner's action was not substantially justified. An award of attorney's fees under the EAJA requires a filing of an application within 30 days of final judgment. 28 U.S.C. § 2412(d)(1)(B). Such an application must include a showing

> that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified.

*Id.* While Ms. Ruth makes an allegation that the Commissioner's position was not substantially justified, she does not provide any of the other required materials. If she wishes to make such an application, she must do so within 30 days of this order.

### Order

The decision of the Commissioner is REVERSED. The case is remanded to the Commissioner for further proceedings before the ALJ.

DATED this 17th day of March, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge